## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| COREY J. EPPS, | : | Civil No. 11-3517 (NLH/AMD) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| LIDESTRI FOODS, INC., et al., | : | |
| Defendants. | : | |

**APPEARANCES:**

Daniel T. Silverman, Esquire
Kevin M. Costello, Esquire
Costello & Mains, P.C.
18000 Horizon Way
Suite 800
Mount Laurel, New Jersey 08054
     *Attorneys for Plaintiff Corey J. Epps*

Douglas Diaz, Esquire
Archer & Greiner, P.C.
One Centennial Square
Haddonfield, New Jersey 08033
     *Attorney for Defendant Lidestri Foods, Inc.*

**HILLMAN, District Judge**

     This matter comes before the Court by way of Defendant
Lidestri Foods, Inc.'s motion [Doc. No. 15] seeking summary
judgment pursuant to Federal Rule of Civil Procedure 56.  The
Court has considered the parties' submissions and decides this
matter pursuant to Federal Rule of Civil Procedure 78.

     For the reasons expressed below, Defendant's motion for

summary judgment will be granted.

I.  **JURISDICTION**

Plaintiff originally filed this action in the Superior Court of New Jersey, Camden County asserting a claim for retaliatory discharge under the New Jersey Law Against Discrimination ("NJLAD").  Defendant Lidestri Foods, Inc. ("Lidestri") removed the action to this Court pursuant to 28 U.S.C. § 1441, et seq., asserting original jurisdiction exists over Plaintiff's state law claims based on diversity of citizenship.[1]

---

[1] The complaint also names Michael DiMaio, improperly pled as Michael D'Amaio, as a Defendant.  (Compl. ¶ 3.)  From the complaint and Lidestri's Notice of Removal, it appears that Defendant Michael DiMaio is potentially a citizen of the state of New Jersey.  (See id.; see also Notice of Removal ¶ 3(d).)

Section 1441(b)(2) of the removal statutes prohibits removal of civil actions "solely on the basis" of diversity jurisdiction "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  Under Section 1441(b)(2), known as the forum defendant rule, "a state court action is not removable based upon diversity jurisdiction if any of the 'properly joined and served' defendants are citizens of the forum state."  Poznanovich v. AstraZeneca Pharmaceuticals LP, No. 11-4001, 2011 WL 6180026, at *1 (D.N.J. Dec. 12, 2011).

Lidestri asserts, however, that removal remains proper in this case and is not barred by Section 1441(b)(2) because DiMaio had not yet been served with the complaint at the time of removal.  (Notice of Removal ¶ 3(d).)  A split of authority on the issue of "whether removal by a non-forum defendant prior to formal service on any defendant, including forum defendants, is valid" exists among the courts in this District.  See Poznanovich, 2011 WL 6180026, at *3-5 (collecting cases).  However, the Court need not resolve this issue because it appears that Plaintiff does not intend to pursue any claims against DiMaio.  He was not served within 120 days of the filing of the complaint as required by Federal Rule of Civil Procedure 4(m), and it appears that Plaintiff has abandoned any claims asserted against him in this action and is proceeding only against the

The Court exercises jurisdiction in this case pursuant to 28 U.S.C. § 1332 based on complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000. Plaintiff Corey Epps is a citizen of the state of New Jersey. (Notice of Removal [Doc. No. 1] ¶ 3(a).)  Lidestri is incorporated in, and maintains its principal place of business in, the state of New York.  (Id. ¶ 3(b).)  The amount in controversy is met because the allegations contained in Plaintiff's complaint sufficiently demonstrate that the damages sought are in excess of $75,000, exclusive of interest and costs.

## II.   **BACKGROUND**

The basic facts of this case are largely undisputed and relate to Plaintiff's involvement in an internal investigation conducted by Lidestri into allegations of sexual harassment brought by another Lidestri employee.  On approximately February 1, 2009, Plaintiff was hired to work for Lidestri as a forklift operator at its Pennsauken, New Jersey manufacturing facility. (Lidestri's Statement of Undisputed Material Facts [Doc. No. 15-3] (hereinafter, "Lidestri's Statement"), ¶ 1; Pl.'s Reply to Def.'s Statement of Undisputed Material Facts [Doc. No. 18-1] (hereinafter, "Pl.'s Statement"), ¶ 1.)  During the course of

---

corporate defendant, Lidestri.  Accordingly, pursuant to Rule 4(m), the Court dismisses Plaintiff's action against DiMaio and his citizenship will not be considered for purposes of diversity jurisdiction.

Plaintiff's employment, Kathleen Jehens, the Human Resources
Manager at the Pennsauken facility, received a letter from
another forklift driver, Hosmay Jorrin, complaining of sexual
harassment by Michael Shaw, a warehouse shift manager at the
Pennsauken facility.  (Lidestri's Statement ¶¶ 3,6; Pl.'s
Statement ¶¶ 3,6.)

As a result of Jorrin's letter on December 13, 2010, Jehens
commenced an internal investigation into Jorrin's allegations the
following day – December 14, 2010.  (Lidestri's Statement ¶¶ 7-8;
Pl.'s Statement ¶¶ 7-8.)  Through the investigation, Jehens
learned from yet another Lidestri employee that Plaintiff might
have information regarding Jorrin's sexual harassment allegations
against Shaw, and therefore Jehens sought to speak with
Plaintiff.  (Lidestri's Statement ¶¶ 9-10; Pl.'s Statement ¶¶ 9-
10.)  On the morning of December 15, 2010, Jehens called Michael
DiMaio, another warehouse shift manager at the Pennsauken
facility, and requested that DiMaio have Plaintiff come to
Jehens's office.  (Lidestri's Statement ¶¶ 2,11; Pl.'s Statement
2,11.)  According to Jehens, at the time of that call, she did
not inform DiMaio of the reason she wanted to speak to
Plaintiff.[2]  (Lidestri's Statement ¶ 14.)

Plaintiff spoke to Jehens at approximately 10:30 a.m. on

_____

[2] Plaintiff admits only that Jehens testified at her
deposition that she did not tell DiMaio why she sought to speak
to Plaintiff.  (Pl.'s Statement ¶ 14.)

December 15, 2010, at which time Jehens "advised Plaintiff that she was trying to obtain information for purposes of an investigation she was conducting regarding allegations of sexual harassment against [warehouse shift manager Michael] Shaw." (Lidestri's Statement ¶¶ 17-18; Pl.'s Statement ¶¶ 17-18.)  When Jehens inquired as to whether Plaintiff had any information regarding the allegations against Shaw, Plaintiff informed Jehens "that he had witnessed Shaw make sexually oriented gestures by rubbing his [own] nipples, heard Shaw state 'how's it hanging,' and noted that Shaw ha[d] a problem with touching."  (Lidestri's Statement ¶¶ 19-20; Pl.'s Statement ¶¶ 19-20.)

Later that morning, at approximately 11:44 a.m., DiMaio sent Jehens an email "write-up" that she had previously requested detailing that on the morning of December 15, 2010, DiMaio observed "Plaintiff sleeping [while on his forklift] in the tomato pasta area [of the facility], waited about fifteen seconds to see if [Plaintiff] woke up, and then tapped Plaintiff on the shoulder when he did not[,]" at which time Plaintiff opened his eyes.  (Lidestri's Statement ¶ 24; Pl.'s Statement ¶ 24.) DiMaio's email also noted that others present in the tomato paste area also saw Plaintiff sleeping on the job.  (Lidestri's Statement ¶ 26; Pl.'s Statement ¶ 26.)  In a follow-up email sent just twelve minutes later, DiMaio informed Jehens that he observed Plaintiff sleeping at around 10:15-10:30 a.m. that

morning and that Plaintiff was previously made aware that sleeping on the forklift constituted grounds for termination. (Ex. 6 to Lidestri's Statement [Doc. No. 15-4] 1.)

Based on DiMaio's information, Jehens requested that DiMaio obtain statements from the other employees present that morning. (Lidestri's Statement ¶ 27; Pl.'s Statement ¶ 27.) DiMaio complied and subsequently provided Jehens with two witness statements. Of the two witness statements, employee Jose Quiroz's statement verified that he had also observed Plaintiff sleeping on his forklift. (Lidestri's Statement ¶ 28; Pl.'s Statement ¶ 28.) The second employee, Jesse Flora, indicated that he saw Plaintiff looking down at his scanner but could not tell if Plaintiff's eyes were closed or not. (Lidestri's Statement ¶ 29; Pl.'s Statement ¶ 29.) As a result of the allegations that Plaintiff was sleeping on the job, Jehens contacted the Corporate Human Resources Manager, Jane Oca, to see if she approved of terminating Plaintiff's employment based on this infraction. (Lidestri's Statement ¶ 30; Pl.'s Statement ¶ 30.)

Later that afternoon, Oca informed Jehens that she could proceed with terminating Plaintiff's employment. (Lidestri's Statement ¶ 30; Pl.'s Statement ¶ 30.) After receiving approval from Oca, Jehens and warehouse manager Rodger Carter met with Plaintiff at approximately 4:30 p.m. and informed Plaintiff that

he was being terminated for sleeping on his forklift. (Lidestri's Statement ¶ 31; Pl.'s Statement ¶ 31.)  Plaintiff denied that he was sleeping and informed Jehens and Carter that he simply had his head down.  (Lidestri's Statement ¶ 32; Pl.'s Statement ¶ 32.)

Based on these facts, Plaintiff brings a one count complaint asserting a claim for retaliatory discharge in violation of the NJLAD.  Plaintiff alleges that he engaged in protected activity under the NJLAD by providing information regarding the sexual harassment allegations against Shaw, that Plaintiff's protected activity was a determinative or motivating factor for his discharge, that he was terminated as a result of providing this information, and that Lidestri's purported basis for terminating Plaintiff – sleeping on the job – was merely a pretext for its retaliatory actions.  (See generally Compl. ¶¶ 5-15.)

## III. <u>DISCUSSION</u>

In the present motion, Lidestri seeks the entry of summary judgment in its favor on Plaintiff's retaliation claim under the NJLAD.  Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

7

322 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (citation omitted); see also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the

absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing <u>Celotex</u>, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  A "party opposing summary judgment may not rest upon the mere allegations or denials of the ... pleading[s.]" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted).  For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Cooper v. Sniezek</u>, 418 F. App'x 56, 58 (3d Cir. 2011) (citing <u>Celotex</u>, 477 U.S. at 322 ).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Anderson</u>, 477 U.S. at 256-57.

## IV.  <u>**ANALYSIS**</u>

Lidestri argues that summary judgment is appropriate in this

9

case because: (1) Plaintiff cannot establish a prima facie case for retaliatory discharge under the NJLAD; and (2) even if Plaintiff could establish a prima facie case, Plaintiff cannot demonstrate that Lidestri's legitimate non-retaliatory reason for terminating Plaintiff was a pretext.

Under the NJLAD, "it is unlawful to 'take reprisals against any person because that person has opposed any practices or acts forbidden under the [LAD].'" Young v. Hobart West Group, 897 A.2d 1063, 1072 (N.J. Super. Ct. App. Div. 2005) (citing N.J. STAT. ANN. § 10:5-12d). As recognized by the New Jersey Supreme Court,

> the protection against retaliation embodied in the LAD is broad and pervasive, and must be seen as necessarily designed to promote the integrity of the underlying antidiscrimination policies of the Act by protecting against reprisals "any person" who has sought to protect his or her own rights not to be discriminated against or who has acted to support such conduct.

Quinlan v. Curtiss-Wright Corp., 8 A.3d 209, 221 (N.J. 2010) (citing Craig v. Suburban Cablevision, Inc., 644 A.2d 112 (N.J. Super. Ct. App. Div. 1994), aff'd, 660 A.2d 505 (1995)).

To establish a prima facie case for retaliation under the NJLAD, a "plaintiff must demonstrate: (1) that [plaintiff] engaged in protected activity; (2) the activity was known to the employer; (3) plaintiff suffered an adverse employment decision; and (4) there existed a causal link between the protected activity and the adverse employment action." Young, 897 A.2d at

1072 (citing Craig, 660 A.2d at 508).  After a plaintiff satisfies its burden to establish a prima facie case, "the defendant[] must 'articulate a legitimate, non-retaliatory reason for the [adverse employment] decision." Young, 897 A.2d at 1072-73 (citing Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1142 (N.J. Super. Ct. App. Div. 1995)).  Upon defendant's proffer of a legitimate, non-retaliatory reason for the challenged adverse employment decision, "the plaintiff must come forward with evidence of a discriminatory motive of the employer, and demonstrate that the legitimate reason was merely a pretext for the underlying discriminatory motive."[3] Romano, 665 A.2d at 1142.

## A.    Protected Activity

As a threshold matter, Lidestri challenges whether "Plaintiff even engaged in any protected conduct" under the NJLAD.  (Br. of Def. Lidestri Foods, Inc. in Supp. of its Mot. for Summ. J. [Doc. No. 15-1] (hereinafter, "Lidestri's Br."), 6.)

---

[3] Plaintiff argues that he "has fulfilled these prima facie requirements such that summary judgment must be denied."  (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. [Doc. No. 18] 3.)  The Court notes, however, that demonstrating only a prima facie case of retaliation under the NJLAD is insufficient to defeat summary judgment.  As set forth more fully below, once a prima facie case is made, a defendant may come forward with a legitimate, non-retaliatory reason for the adverse employment action.  At that time, the burden shifts back to a plaintiff to demonstrate that the proffered reason is a pretext.  If a plaintiff meets his burden on the issue of pretext, only then, can the Court deny summary judgment.

Citing to N.J. Stat. Ann. § 10:5-12(d), Lidestri contends that Plaintiff did not oppose any practices or acts forbidden by the NJLAD, did not file any complaints, and did not provide any testimony or assistance in any proceedings under the Act.  (Id.) Rather, Lidestri asserts that Plaintiff merely answered questions posed by Lidestri's Human Resources Manager regarding conduct Plaintiff observed by Shaw.  (Id.)  Answering these questions, Lidestri argues, does not constitute protected activity under the NJLAD.  However, Lidestri offers no authority for this proposition, and the Court's independent review of the case law failed to reveal any.

In New Jersey, "the protection against retaliation embodied in the LAD is *broad and pervasive* ... protecting against reprisals 'any person' ... who has acted to support" other individuals seeking to "protect [their] own rights not to be discriminated against[.]" Quinlan, 8 A.3d at 221.  Moreover, Lidestri fails to cite Section 10:5-12(d) in its entirety which also prohibits reprisals "on account of [a] person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act." N.J. Stat. Ann. § 10:5-12(d).  Mindful of the broad and pervasive nature of the protection this Section provides and interpreting this Section in its entirety, the Court rejects Lidestri's argument.  The Court finds that Plaintiff clearly engaged in protected activity under

12

the NJLAD when he provided Jehens information, at her specific request, to aide in the investigation of sexual harassment charges against Shaw brought by another Lidestri employee – Hosmay Jorrin.  (See generally Lidestri's Statement ¶¶ 17-20; Pl.'s Statement ¶¶ 17-20.)  Specifically, in support of Jorrin's allegations, Plaintiff advised Jehens that Shaw had a problem with touching, made sexually oriented gestures and other suggestive comments to employees.  (See generally Lidestri's Statement ¶¶ 17-20; Pl.'s Statement ¶¶ 17-20.)

In this case, Lidestri employee Hosmay Jorrin brought charges of sexual harassment against shift manager Michael Shaw – conduct that obviously qualifies as Jorrin exercising and enjoying his right to be free from discrimination, a right protected by the NJLAD.  Plaintiff's providing of information regarding Shaw's conduct, specifically at the request of a human resources manager investigating charges can fairly be considered as Plaintiff's attempt to "aid" or "encourage" Jorrin in exercising and enjoying his own rights under the Act. Accordingly, Section 10:5-12(d) prohibited Plaintiff from being subjected to retaliation "on account of [Plaintiff] having aided or encouraged ... [Jorrin] in the exercise or enjoyment of," his right to be free from sexual harassment under the Act.  Thus, the Court concludes that Plaintiff has satisfied the first element of his prima facie case.

13

### B.   Activity Known to Employer & Adverse Employment Action

For purposes of this motion, the parties do not dispute that Lidestri had knowledge, through Jehens, of Plaintiff's comments regarding alleged sexual harassment by Shaw, nor do they dispute that Plaintiff's termination qualifies as an adverse employment action under the LAD.  See Bowers v. New Jersey Judiciary, Superior Court, 2011 WL 3794947, at *15 (N.J. Super. Ct. App. Div. Aug. 29, 2011) ("Demotion, termination, and loss in pay or benefits are examples of adverse employment actions for which liability may attach under the LAD.")  Accordingly, the Court finds that the second and third elements of Plaintiff's prima facie case have been met.

### C.   Causal Link Between Protected Activity & Adverse Action

Lidestri contends that Plaintiff cannot satisfy the causation element of his prima facie case for three reasons: (1) although Plaintiff directs his claim of retaliation against DiMaio, DiMaio was not aware of Plaintiff's purported protected activity, i.e., the information Plaintiff provided to Jehens regarding Shaw's conduct; (2) Plaintiff's contention that he was fired for confirming Shaw's alleged sexual harassment to Jehens is "absurd" given that Jehens "specifically solicited such information from Plaintiff[;]" and (3) other employees, similar to Plaintiff, who advised Jehens of Shaw's conduct were not terminated.  (Lidestri's Br. 6-7) (emphasis omitted).

14

Plaintiff argues that the causation "inquiry should begin with the temporal proximity between Plaintiff's protected conduct and his termination."  (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. [Doc. No. 18] (hereinafter, "Pl.'s Opp'n"), 5.)  According to Plaintiff, the "facts giving rise to [his] termination and his actual termination arose within mere hours of his protected conduct" because Plaintiff met with Jehens at approximately 10:30 a.m., DiMaio's email reporting that Plaintiff was sleeping on his forklift was sent at 11:44 a.m., and Plaintiff was terminated approximately four to five hours after the email was sent.  (Id.)  Plaintiff relies almost exclusively on this temporal proximity to support an inference of causation.

While Plaintiff may be correct that the causal link inquiry begins with the temporal proximity of the events in question, the inquiry does not end there.  Under the NJLAD "the mere fact that an adverse employment action occurs after the protected activity will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two."  Young, 897 A.2d at 1073. (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)) (internal quotations, brackets, and citation omitted); see also El-Sioufi v. St. Peter's Univ. Hosp., 887 A.2d 1170, 1189 (N.J. Super. Ct. App. Div. 2005) (explaining that "mere temporal synchrony alone is insufficient to sustain plaintiff's prima facie case" for retaliation under the NJLAD).

15

Standing alone, temporal proximity can only support an inference of causation "where the facts of the particular case are ... 'unusually suggestive of retaliatory motive[.]'" Young, 897 A.2d at 1073 (citing Krouse, 126 F.3d at 503). "Where the timing alone is not 'unusually suggestive,' the plaintiff must set forth other evidence to establish the causal link." Young, 897 A.2d at 1073 (citation omitted). Because temporal proximity alone is inadequate to establish the required causal link, the Court cannot scrutinize allegations of retaliation in isolation – looking strictly at the hands of the clock or the days on the calendar. Rather, the Court must examine these allegations in the context within which they arose.

Here, the temporal proximity of Plaintiff's termination and his protected activity arose in the following undisputed context. Beginning approximately one day prior to Plaintiff's termination,[4] Jehens, in her role as Human Resources Manager at the Pennsauken facility was actively investigating allegations of sexual harassment against Shaw based on the complaints by Jorrin. (Lidestri's Statement ¶¶ 3,6-8; Pl.'s Statement ¶¶ 3,6-8.) Jehens's investigation specifically led her to seek out an interview with Plaintiff regarding his knowledge of Shaw's allegedly harassing conduct. (Lidestri's Statement ¶¶ 2, 9-11;

_____

[4] Plaintiff was terminated on December 15, 2010. Jehens commenced her sexual harassment investigation on December 14, 2010.

Pl.'s Statement ¶¶ 2, 9-11.)  Jehens "advised Plaintiff that she
was trying to obtain information for purposes of an investigation
she was conducting regarding allegations of sexual harassment
against Shaw" when she interviewed him on the morning of December
15, 2010, several hours before his termination.  (Lidestri's
Statement ¶¶ 17-18; Pl.'s Statement ¶¶ 17-18.)  After being
questioned by Jehens on the subject, Plaintiff provided Jehens
with several observations regarding Shaw's alleged conduct.
(Lidestri's Statement ¶¶ 19-20; Pl.'s Statement ¶¶ 19-20.)

Lidestri argues, and the Court agrees, that in light of
these undisputed facts and the context in which they arose, "it
is illogical to suggest that there is any causal connection
between the information that Human Resources specifically
solicited from Plaintiff and Plaintiff's termination."  (Reply
Br. of Def. Lidestri Foods, Inc. in Supp. of its Mot. for Summ.
J. [Doc. No. 19] (hereinafter, "Lidestri's Reply"), 1.)  The
notion that an employer would seek out a specific employee to
provide information and assistance regarding a workplace issue
like sexual harassment; and then encourage, provoke, and
instigate the employee to engage in a form of protected activity
under the Act by providing such information, only to retaliate
against that employee for the protected activity the employer
itself prompted in the first place is nonsensical.  In most
circumstances, where an employer is already aware of a workplace

17

issue and taking corrective action steps to investigate or
otherwise remedy the problem prior to the time a plaintiff
engages in protected activity – i.e., complaining to the employer
about the same issue – the employer cannot fairly be said to act
in retaliation against that employee for highlighting a problem
known to the employer.  See Young, 897 A.2d at 1074 (finding it
"illogical to argue that [an employee] would be fired for raising
an issue that [the employer] admittedly [was] reviewing.")

While the time frame of about six or seven hours between
Plaintiff's protected activity and Plaintiff's termination is
indeed quite minimal, the factual context of this case is not so
"unusually suggestive" of retaliatory motive to support an
inference of causation based solely on this temporal proximity.
Moreover, Plaintiff has not set forth any other evidence
sufficient to establish a causal link between his protected
activity and his termination.  Accordingly, the Court finds that
Plaintiff has failed to establish the fourth required element of
his prima facie case and Lidestri is entitled to summary
judgment.[5]

---

[5] The Court notes the existence of a dispute between the
parties as to whether DiMaio allegedly observed Plaintiff
sleeping on his forklift before Plaintiff was interviewed by
Jehens or after Plaintiff had provided Jehens with information
regarding Shaw's alleged sexual harassment.  Both DiMaio and
Jehens testified that DiMaio caught Plaintiff sleeping and
informed Jehens of this offense prior to the time of Plaintiff's
interview with Jehens.  (See Tr. of DiMaio Dep., Ex. 2 to
Lidestri's Statement 50:12-18, 95:9-13, 20-22; see also Tr. of

### D.    Legitimate, Non-Retaliatory Reason & Pretext

Even assuming that Plaintiff could establish a prima facie case of retaliation here, Lidestri has articulated a legitimate, non-retaliatory reason for Plaintiff's termination – that Plaintiff was terminated for sleeping while on his forklift during his shift.  The undisputed testimony and documentary evidence establish the following.  At approximately 11:44 a.m. on the morning of December 15, 2010, Plaintiff's supervisor, Michael DiMaio, sent Jehens an email "write-up" detailing that on the same morning, DiMaio observed "Plaintiff sleeping [while on his forklift] in the tomato pasta area [of the facility], waited about fifteen seconds to see if [Plaintiff] woke up, and then tapped Plaintiff on the shoulder when he did not" at which time Plaintiff opened his eyes.  (Lidestri's Statement ¶ 24; Pl.'s Statement ¶ 24.)  In addition to the supervisor, DiMaio, at least

---

Jehens Dep., Ex. 3 to Lidestri's Statement 71:23-72:13.) Plaintiff denies that he was sleeping and contends that he spoke to Jehens first, before DiMaio spoke to him about sleeping on the forklift.  (Tr. of Pl.'s Dep., Ex.A to Pl.'s Opp'n 76:24-77:3.)

However, this disputed fact is not material to the resolution of Lidestri's motion for summary judgment because it does not affect the outcome under the governing law.  Even if a jury credited Plaintiff's testimony that he spoke to Jehens before DiMaio confronted him with allegations that he was sleeping on the job, temporal proximity between protected activity and the adverse employment action is not sufficient standing alone to demonstrate causation.  Further, as set forth infra, the Court finds that even if Plaintiff could demonstrate the required causal link satisfying the elements of his prima facie case, Plaintiff has failed to offer sufficient evidence of pretext.

one other employee, Jose Quiroz, saw Plaintiff sleeping on the job on December 15, 2010.[6] (Lidestri's Statement ¶¶ 26, 28; Pl.'s Statement ¶¶ 26, 28; see also Jose Quiroz Statement, Ex. 7 to Lidestri's Statement [Doc. No. 15-5] 1.)

Based on this information, Jehens contacted the Corporate Human Resources Manager, Jane Oca, requesting approval to terminate Plaintiff for sleeping on his forklift during his shift, and Oca thereafter approved Plaintiff's termination. (Lidestri's Statement ¶ 30; Pl.'s Statement ¶ 30.)  Subsequently, Jehens and Carter met with Plaintiff at approximately 4:30 p.m. and informed Plaintiff that he was being terminated for sleeping on his forklift.  (Lidestri's Statement ¶ 31; Pl.'s Statement ¶ 31.)

In light of these undisputed facts, the Court is satisfied that Lidestri has met its burden to articulate a legitimate, non-retaliatory reason for Plaintiff's termination.  That is, Lidestri did not terminate Plaintiff in retaliation for providing information in the sexual harassment investigation against Shaw, but rather, Plaintiff was terminated after a supervisor and another employee observed Plaintiff sleeping on his forklift during shift the same day of his interview with Jehens.

---

[6]Jose Quiroz's statement also indicated that he had observed Plaintiff sleeping on his forklift on past occasions.  (Jose Quiroz Statement, Ex. 7 to Lidestri's Statement [Doc. No. 15-5] 1.)

Accordingly, the burden is now on Plaintiff to come forward with evidence of a discriminatory motive and to demonstrate that Lidestri's proffered reason was merely a pretext.  Young, 897 A.2d at 1073; see also Goldie v. Jones, 2009 WL 2475342, at *4 (N.J. Super. Ct. App. Div. Aug. 14, 2009) (citing Kolb v. Burns, 727 A.2d 525, 531 (N.J. Super. Ct. App. Div. 1999) (noting that "the plaintiff 'has the ultimate burden of proving that the employer's proffered reasons were a pretext for the discriminatory action.'").  To survive a motion for summary judgment, Plaintiff is not required to "provide direct evidence that [the] employer acted for discriminatory reasons[.]"  Kolb, 727 A.2d at 531.  Plaintiff "need only point to sufficient evidence to support an inference that the employer did not act for its proffered non-discriminatory reasons."  Id.  Plaintiff, "as the nonmoving party, 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."'"  Id. (citing Fuentes v. Perskie, 32 F.3d 759, 765 (3rd Cir. 1994)).  To defeat summary judgment, Plaintiff "must raise a genuine issue of material fact regarding whether the employer's proffered explanation is pretextual or whether, the 'retaliatory

discrimination was more likely than not a determinative factor in the decision.'"  Kolb, 727 A.2d at 531.

In meeting his burden to demonstrate pretext, Plaintiff may not, however, rest on mere allegations or denials of the pleadings, and must identify, by affidavits or otherwise, specific facts showing there is a genuine issue for trial.  See Celotex, 477 U.S. at 324; Saldana, 260 F.3d at 232.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.

Plaintiff has failed to meet his burden here to demonstrate that Lidestri's proffered reason is merely a pretext for an underlying discriminatory motive.  Plaintiff's most discernible attempt to demonstrate evidence of pretext comes from the deposition testimony of Terry Mayfield, another Lidestri manager. Plaintiff argues that Mayfield "testified that he had seen multiple employees sleeping on multiple occasions and that sleeping did not constitute grounds for termination" in order to demonstrate pretext here. (Pl.'s Opp'n 6.)  However, a careful review of Mayfield's deposition reveals that Plaintiff has mischaracterized this testimony, and no other meaningful evidence of pretext has been presented to the Court.

When asked whether he had "ever seen anyone sleeping on the

job at LiDestri", Mayfield indicated he had observed "[d]ifferent
employees, ... at different times" sleeping on the job "depending
on where you catch them[.]"  (Tr. of Mayfield's Dep., Ex. D to
Pl.'s Opp'n [Doc. No. 18-3] 36:6-12.)  Importantly, when asked
whether falling sleeping on the job was grounds for termination,
Mayfield did not affirmatively testify that that it was not.
Rather, Mayfield stated that he did not think it was grounds for
termination.  (Id. at 37:14-17.)  Moreover, while Mayfield
testified that none of the employees he witnessed sleeping on the
job were terminated, it is unclear from his testimony whether
these employees were actually reported to Human Resources for
sleeping on the job such that termination could have occurred.
Thus there is no evidence from which a reasonable factfinder
could find that Lidestri's proffered reason is unworthy of
credence and infer that Lidestri did not act for its asserted,
non-discriminatory reason.

When considered in the factual context of this particular
case, Mayfield's testimony is inadequate to show the type of
weaknesses, implausibilities, inconsistencies, incoherencies, or
contradictions inherent in Lidestri's legitimate reason for
termination from which a reasonable factfinder could rationally
disbelieve Lidestri and infer a discriminatory motive.  The email
exchange between DiMaio, Jehens, and Oca on December 15, 2010 and
Jehens deposition testimony demonstrate that DiMaio and upper

23

level Human Resource managers were aware that sleeping on the job constituted grounds for termination and that Plaintiff had previously been warned of the same.  (Ex. 6 to Lidestri's Statement [Doc. No. 15-4] 1; see also Tr. of Jehens' Dep., Ex. B to Pl.'s Opp'n [Doc. No. 18-2] 72:6-8, 75:24-26)("I notified [DiMaio] that that's [sleeping on the job is] zero tolerance" and "It's going to have to result in termination.")  Mayfield's personal uncertainty as to whether sleeping on the job warranted termination and his failure to address the fate of any employees caught sleeping on the job and reported to Human Resources cannot overcome Lidestri's proffered reason for terminating Plaintiff.

The absence of sufficient evidence of pretext for Plaintiff's termination is further strengthened by facts leading to Plaintiff's protected activity.  As the Court noted supra, Jehens specifically sought Plaintiff's assistance during the course of her sexual harassment investigation into Shaw's conduct.  To suggest that Jehens specifically sought this information from Plaintiff only to then turn around and terminate Plaintiff for providing the same is illogical.  Lidestri was aware of the sexual harassment complaints against Shaw and was taking steps to investigate and remedy the situation, including interviewing Plaintiff regarding his knowledge.  Jehens commenced her investigation into Shaw's conduct the day prior to Plaintiff's termination, and it was only during the course of her

24

investigation, that she learned from DiMaio, and verified through Quiroz's statement, that Plaintiff had been sleeping on his forklift during shift.

In these circumstances, Plaintiff has failed to meet his burden to defeat summary judgment on the issue of pretext. Plaintiff has not come forward with adequate evidence raising a genuine issue of material fact as to whether Lidestri's proffered reason is a pretext sufficient for a jury to infer that retaliatory discrimination was more likely than not a determinative factor in terminating Plaintiff's employment.  See Kolb, 727 A.2d at 531.  Accordingly, Lidestri is entitled to summary judgment on Plaintiff's complaint.

V.    **CONCLUSION**

For the foregoing reasons, Defendant Lidestri Foods, Inc.'s motion for summary judgment is granted.  An Order consistent with this Opinion will be entered.


Dated: March 25, 2013                s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

25